## KELLETT AUTOGIRO CORPORATION et al. v. PIKE et al.

District Court, S. D. New York.

Oct. 31, 1938.

Bokat & Bokat, of New York City (Leonard L. Kalish, of Philadelphia, Pa., of counsel), for plaintiffs.

W. Lee Helms, of New York City, for defendants.

COXE, District Judge.

This is a motion by the plaintiffs in a patent suit for an injunction pendente lite against the defendants S. S. Pike and S. S. Pike Company, Inc.

The suit involves the two Bleriot patents, Nos. 1,727,095 and 1,794,828, both relating to devices for aerial advertising and

signaling. The claims in issue are Nos. 2 and 3 of patent No. 1,727,095, and No. 9 of patent No. 1,794,828. These same claims were recently held valid and infringed, at final hearing, by the District Court in New Jersey in the case of Kellett Autogiro Corporation v. Brohan, 24 F.Supp. 81.

The defendants in their answering affidavits have challenged the validity of all three claims in the two patents, but counsel in his supplementary brief has so narrowed the issues as to eliminate everything except the single question of infringement; and, inasmuch as I do not think that infringement is clear enough to warrant the issuance of a preliminary injunction, I do not deem it necessary to decide the estoppel question raised by the plaintiffs, or to pass on the validity of any of the claims.

In the first patent, No. 1,727,095, the invention is shown in three distinct forms, one, in which the display sheet is attached to a pair of main towing cables, another, in which a single main towing cable is used, and still a third in which the display sheet is fastened directly to the lower wing of the plane instead of being suspended from cables. Claims 2 and 3 have to do only with the form in which a single main towing cable is used, and the two others may, therefore, be disregarded for the present purpose. This single cable form is well illustrated in Fig. 4 of the drawings, and shows a display sheet with a stiffening rod fitted into one of its ends, to which the single main towing cable is attached by means of a number of radiating auxiliary cables. There is also shown a guide member "located under the center of gravity of the machine", through which the main towing cable passes into the fuselage, thus permitting the cable "to be lengthened, shortened or released completely before landing."

I think that Bleriot's contribution, in so far as Claims 2 and 3 are concerned, rests entirely on the location of the place of anchorage of the towing cable. Clearly, there was no invention in attaching a towing bridle to a stiffening rod fastened at one end of a display sheet; that was old practice before Bleriot, and is fully disclosed by Finlay. Bleriot's main problem was not to disturb the equilibrium of the machine while it was engaged in towing. He also wanted to bring the towing cable into the fuselage at a point where it could be handled conveniently. He, therefore, fixed his place of anchorage "under the center of gravity of the flying machine".

This was the best place of attachment from the standpoint of stability, and it served the added purpose of bringing the towing cable into the fuselage at a point where it would be accessible to the operator.

Claims 2 and 3 call for "a single cable connected to and extending from under the center of gravity of the flying machine for towing said sheet". This does not mean a point in a vertical line directly under the center of gravity; all that the language requires is a place of anchorage approximately underneath the center of gravity. Certainly there is nothing to support the contention of the plaintiffs that it is of no importance where the anchorage is, "so long as the line of the towing cable passes under the center of gravity of the flying machine". With any such interpretation as this, the words "extending from" would be utterly meaningless.

The defendants in their towing operations have none of Bleriot's means for lengthening, shortening or releasing the towing cable; they merely attach the cable to the machine before starting, and leave it in that condition until the flight is completed. With some of the defendants' machines the place of anchorage is more than fifteen feet back of a vertical line passing through the center of gravity; with others, it is more than seven feet back of this same vertical line. I do not think that either of these points responds to the language of Claims 2 or 3.

The second patent, No. 1,794,828, has for its main object to provide means for releasing, while in flight, a rolled up display banner, enclosed in a wrapping of paper, in such a way that the banner will unfold and assume an operative position. A further object is stated to be to provide means for turning the banner into an upright towing position. This latter means is shown preferably as a weight mounted at one end of the spreader bar of the banner.

Claim 9 has as one of its elements "means operative to swing said banner and bar into a vertical plane when said banner is towed behind the flying machine". It may well be doubted whether it amounts to invention merely to weight one end of the spreader bar in order to bring the banner to an upright position. It is not necessary, however, to take that ground. The claim reads "means operative to swing said banner and bar into a vertical position". That, clearly, has reference to the releasing op-

eration while the machine is in flight; it has no application to the practice followed by the defendants of having the banner in vertical position when it leaves the ground, and then maintaining it in that position during the towing operation by weighting the lower end of the spreader bar. I do not think that Claim 9 has been infringed.

The motion of the plaintiffs for a preliminary injunction is denied.